United States Court of Appeals
Fifth Circuit

**F I L E D**

September 12, 2006

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————

No. 04-20734

———————————

CORTE B. ADAMS,

                                      Plaintiff-Appellant,

versus

TRAVELERS INDEMNITY COMPANY OF CONNECTICUT;
TRAVELERS PROPERTY & CASUALTY CO.;
TRAVELERS INSURANCE CO.;
GOODYEAR TIRE & RUBBER CO.,

                                      Defendants-Appellees.

———————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:03-CV-1333

———————————

Before JOLLY, HIGGINBOTHAM, and SMITH, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

This case brings questions of whether an employee acted within the permissive use authorized by his employer, Goodyear Tires, when he fell asleep at the wheel of a company truck. Applying Texas law, we conclude that genuine issues of material fact remain, and we reverse and remand.

I

Goodyear Tire and Rubber Company hired Corte Adams in April 1998 as a service technician to change tires and fix flats in its

Houston, Texas shop. In September 1998, Adams transferred to the Bryan, Texas shop, which specializes as a commercial truck tire center; he was trained and promoted to the position of truck alignment specialist. After the transfer, Adams continued to live in Houston and commuted four hours each day to and from Bryan.

Though Adams owned a car, Goodyear allowed him to use a company-owned one-ton GMC pickup truck in his travel between Houston and Bryan. Goodyear did not hire Adams as a driver. Nevertheless, once or twice a week Adams dropped off or picked up tires at the Houston shop on his way home from Bryan in the evenings or on the way back to Bryan the next morning. When he had a delivery or a pick-up, Adams was "on the clock" for Goodyear until he dropped the tires off at the Houston shop in the evening or after he arrived at the Houston shop in the morning to pick up tires. When making a delivery or a pick-up, Adams was paid for the driving time. In addition, Goodyear required Adams to carry a pager at all times. Adams often used the company truck, with his boss's knowledge, during working hours to run small personal errands such as picking up lunch.

On Friday February 26, 1999, Adams left Bryan in the late afternoon, approximately 5:30pm. After he delivered the tires to the Houston shop at approximately 7:00 pm, Adams stopped for Chinese take-out and drove to his father's house, where he arrived by approximately 8:30 pm. There, Adams ate supper, consumed four

2

or five beers, and slept for approximately four hours. Sometime between 1:00 and 2:00 am, Adams awoke and drove the Goodyear truck to a convenience store in order to purchase cigarettes for his father.[1] On his way back to his father's home from the store, Adams caused a traffic accident when he fell asleep at the wheel and crossed the center stripe into oncoming traffic. He collided with a vehicle driven by Patrick Mayes, severely injuring Mayes.[2] Adams, too, was injured and unable to work. Two months later, Goodyear fired Adams for using the truck in an unauthorized manner.

After Mayes sued Adams and Goodyear, Goodyear's insurer, Appellees Travelers Indemnity Company of Connecticut, Travelers Property & Casualty Insurance Company, Travelers Insurance Corporation (collectively "Travelers"), refused to cover Adams, thereby refusing to recompense his damages or defend and indemnify

---

[1] Adams's home, his father's house, and the convenience store are all within a ten minute drive of one another.

[2] Mayes sued Goodyear in state court under the theory of *respondeat superior*, contending that Adams was within the course and scope of his employment when the accident happened. The court granted summary judgment in favor of Goodyear. In an opinion released June 10, 2004, the state court of appeals reversed, finding that the proof of workers' compensation payments and the following facts created a genuine issue of material fact regarding whether Adams "was acting within the course and scope of his employment," despite being on a personal errand:

> that Adams (1) was driving a Goodyear truck filled with Goodyear tires he had undertaken to deliver after leaving Bryan the previous evening and before returning the next morning, and was "on the clock" when he was making deliveries; (2) had a delivery to make that morning because he had been unable to deliver the tires the night before; (3) was available via pager 24 hours a day; and (4) was not restricted in any way from using the truck for personal business.

*Mayes v. Goodyear Tire and Rubber Company*, 144 S.W.3d 50 (Tex. App. 2004, pet. filed).

3

him.  Adams sued Travelers and Goodyear in state court, alleging violations of the Texas Insurance Code and the Texas Deceptive Trade Practices Act and common-law bad faith, fraud, and breach of contract for refusal to provide coverage.[3]  Appellees removed Adams's suit to federal court on diversity grounds.  Thereafter, Travelers moved for summary judgment on all claims.  Adams failed to timely respond to Appellees' motion despite receiving two extensions, totaling more than 97 days, and the District Court denied both Adams's motion for leave to file out of time and his motion for a continuance.  The District Court, then, granted Travelers's uncontested motion for summary judgment.  The district court denied Adams's motion for a new trial, and this appeal followed.

II

Adams argues that the District Court erred by not relying upon his untimely response in opposition to Travelers's filing for summary judgment, by not granting an extension under Rule 6(b)(2),[4] and by not granting a continuance for further discovery under Rule

---

[3] As the District Court concluded, Goodyear is not a proper party to this suit; it is not an insurance provider and the fraud allegation stems from representations purportedly made by Travelers.

[4] *See* FED.R.CIV.P. 6(b)(2):

When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion...upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect....

56(f).[5]  We review for abuse of discretion.[6]  After two extensions beyond the initial February 2004 deadline, Adams filed both his response to Travelers motion for summary judgment and a request for a third extension on June 9, 2004, the day following the final due date.[7]  The District Court did not abuse its discretion by refusing to apply Adams's untimely response to Travelers' motion for summary judgment, despite having read it, or by denying an extension because Adams failed to demonstrate excusable neglect.[8]  Adams had

---

[5]  FED.R.CIV.P. 56(f):

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or make such other order as is just.

[6]  *See Bernhard v. Richardson-Merrell, Inc.*, 892 F.2d 440, 444 (5th Cir. 1990) (stating that "absent an affirmative showing by the non-moving party of excusable neglect according to Rule 6(b), a court does not abuse its discretion when it refuses out-of-time affidavits").

[7]  Adams's attorney cited personal and financial reasons related to his divorce and an emergency room visit in October 2003 for the habitual tardiness. *See Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996) (denying an additional extension of "twenty-four little hours" given the totality of the circumstances, including two prior extensions for nearly three times the allotted period for compliance); *but cf. Hibernia National bank v. Administracion Central Sociedad*, 776 F.2d 1277, 1280 (5th Cir. 1985) (finding excusable neglect where "the district judge's notice of the filing deadline did not reach the [non-movant] until the day after the deadline had passed").

[8]  Relevant factors to the excusable neglect inquiry include: "the danger of prejudice to the [non-movant], the length of the delay and its potential impact on the judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *See Farina v. Mission Inv. Trust*, 615 F.2d 1068, 1076 (5th Cir. 1980); *Pioneer Inv. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395-97 (1993).

ample time to comply with the extended deadline.[9]

Rule 56(f) authorizes a district court to "order a continuance to permit affidavits to be taken or depositions to be taken or discovery to be had," if the non-movant files affidavits showing that he or she "cannot for reasons stated present by affidavit facts necessary to justify the party's opposition."[10] A non-movant seeking relief under Rule 56(f) must show: (1) why he needs additional discovery and (2) how that discovery will create a genuine issue of material fact.[11] A party "cannot evade summary judgment simply by arguing that additional discovery is needed,"[12] and may not "simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts."[13] Adams did not provide reason enough to warrant a continuance, relying solely

---

[9]
> [S]uch delays are a particularly abhorrent feature of today's trial practice. They increase the cost of litigation, to the detriment of the parties enmeshed in it; they are one factor causing disrespect for lawyers and the judicial process; and they fuel the increasing resort to means of non-judicial dispute resolution. Adherence to reasonable deadlines is critical to restoring integrity in court proceedings.

*Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir. 1990) (addressing a missed discovery deadline).

[10] *Wichita Falls Office Assoc. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992) (reversing the district court and granting a continuance).

[11] *Beattie v. Madison County School Dist.*, 254 F.3d 595, 605 (5th Cir. 2001) (reviewing for an abuse of discretion the denial of a motion for continuance to allow for additional discovery).

[12] *See Brown v. Mississippi Valley State Univ.*, 311 F.3d 328, 333, n.5 (5th Cir. 2002).

[13] *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 305 (5th Cir. 2004).

on his personal problems to excuse the failure to rebut Travelers'
assertion that no genuine issue of material fact existed.  Though
relevant, the evidence he wished to acquire, including deposition
testimony relating to a corporate policy allowing limited personal
use of company vehicles, was available throughout the 100 days of
extra time granted by the District Court.[14]  The District Court did
not abuse its discretion in denying Adams's Motion for Continuance
to conduct specific limited discovery in response to Travelers'
motion for summary judgment.  We, therefore, make our determination
regarding the appropriateness of summary judgment based on the
record as developed primarily by Travelers.


# III

Adams attempts to imbue the instant case with the result
reached by the Texas appellate court in *Mayes v. Goodyear*,[15] tacitly
invoking both collateral estoppel[16] and the principle of diversity

---

[14]  "[T]he non-movant must diligently pursue relevant discovery--the trial
court need not aid non-movants who have occasioned their own predicament through
sloth." *Wichita Falls Office Assoc.*, 978 F.2d at 919; *American Lease Plans, Inc.
v. Silver Sand Co.*, 637 F.2d 311, 318 (5th Cir. 1981) (stating that "Silver Sand
has proffered no reasons why the discovery the company now deems essential was
not conducted earlier during the long course of this lawsuit; the company does
not argue that this information was in any way inaccessible").

[15]  *Mayes*, 144 S.W.3d 50.

[16]  "Collateral estoppel applies when, in the initial litigation, (1) the
issue at stake in the pending litigation is the same, (2) the issue was actually
litigated, and (3) the determination of the issue in the initial litigation was
a necessary part of the judgment."  *Harvey Specialty & Supply, Inc. v. Anson
Flowline Equip., Inc.*, 434 F.3d 320, 323 (5th Cir. 2005); *see Minter v. Great
American Insurance Company of New York*, 423 F.3d 460, 464-65 (5th Cir. 2005)
(noting that the district court found the driver collaterally estopped from
arguing that he was operating the vehicle within the course and scope of his

7

jurisdiction which requires this Court to apply the law of the state in which it resides.[17] *Mayes* issued on the same day as final judgment was entered in the instant case, and, thereafter, Adams filed a Motion for New Trial and/or Motion for Reconsideration.[18] The District Court denied the motion; we review for abuse of discretion.[19]

*Mayes* does not benefit Adams. As an intermediate appellate decision pending appeal to the Texas Supreme Court, it does not control and cannot be relied upon as binding state authority or as preclusive given the divergent records.[20] Therefore, the District Court did not abuse its discretion by denying Adams's motion for reconsideration in light of *Mayes*.

---

employment at the time of the collision and that the insurance company was not estopped from arguing that the driver was without permission because the issue had not been vigorously litigated during the suit by an injured third party).

[17] *Erie R.R. v Tompkins*, 304 U.S. 64, 78-79 (1938). "In order to determine questions of state law, federal courts look to final decisions of the state's highest court. While decisions of intermediate state appellate courts provide guidance, they are not controlling. If a state's highest court has not ruled on the issue in question, a federal court must determine, to the best of its ability, what the highest court of the state would decide." *United Teacher Assocs. Ins. Co v. Union Labor Life Ins. Co.*, 414 F.3d 558, 565-566 (5th Cir. 2005) (internal citations omitted).

[18] *See* FED.R.CIV.P. 60(b). This motion was filed 14 days after the District Court entered final judgment.

[19] *McCorvey v. Hill*, 385 F.3d 846, 848 (5th Cir. 2004). "A district court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 638 (5th Cir. 2005).

[20] Since Adams failed to timely file a response, the record is not identical to that relied upon by the state court. *See supra* n.2 (describing the pertinent facts in the record of the state case). For example, the record in the instant case does not contain evidence regarding workers compensation or unrestricted personal use of the vehicle.

IV

We review *de novo* a district court's grant of summary judgment, applying the same standard as below.[21]  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[22]  The moving party bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact."[23]  In adjudicating a motion for summary judgment, the court must view all facts in the light most favorable to the non-movant.[24]

Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and designate "specific facts" in the record "showing that there is a genuine issue for trial."[25]  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.[26]  "Rule 56 does

---

[21] *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001).

[22] FED.R.CIV.P. 56(c).

[23] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[24] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[25] *Celotex*, 777 U.S. at 324.

[26] *Anderson v. Libby Lobby, Inc.*, 477 U.S. 242, 247-49 (1986).

9

not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."[27]  A failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists.[28]  As the District Court, therefore, explained: "[s]ince the plaintiff failed to respond to the defendant's motion for summary judgment, the inquiry must be whether the facts presented by the defendants create an appropriate basis to enter summary judgment against the plaintiff."[29]

V

In defending the District Court's grant of summary judgment, Travelers contends that Adams does not qualify as an insured.  The policy defines an insured as, *inter alia*: "Anyone else while using *with your permission* a covered auto you own, hire, or borrow..." (emphasis added).[30]  It is uncontested that the Goodyear truck is

---

[27] *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)(internal quotations omitted).

[28] *Saunders v. Michelin Tire Corp.*, 942 F.2d 299, 301 (5th Cir. 1991).

[29] *See* FED.R.CIV.P. 56(e).

[30] This permissive-user clause is commonly referred to as an "omnibus clause."  *See* BLACK'S LAW DICTIONARY 1121 (8th ed. 2004) (defining "omnibus clause" as a provision in an automobile insurance policy that extends coverage to all drivers operating the insured vehicle with the owner's permission).  Adams unpersuasively argues that the clause is an exclusion rather than an affirmative prerequisite to coverage, thereby shifting the burden of proof to Travelers. *See* *Marshall*, 388 S.W.2d at 181 (distinguishing policy prerequisites and exclusions).

10

a "covered auto."  Travelers instead argues that Adams's accident occurred while without permissive use of Goodyear's truck and, therefore, that Adams is not entitled to defense or indemnification because he cannot prove coverage.[31]

A. Nature of permission

In Texas, permission is "consent to use the vehicle at the time and place in question and in a manner authorized by the owner, either express or implied."[32]  In *Royal Indemnity Company v. H. E. Abbott & Sons, Inc.*, the Texas Supreme Court wrote:

> While express permission must be affirmatively stated, implied permission may be inferred from a course of conduct or relationship between the parties in which there is mutual acquiescence or lack of objection signifying consent. It is usually shown by usage and practice of the parties over a period of time preceding the occasion on which the automobile was being used.[33]

Therefore, permission, sufficient to support coverage under an omnibus clause of an insurance policy, may be either express or implied.

1. Express permission

Adams contended at the hearing on summary judgment and now argues on appeal that he had express authority to use the Goodyear truck for personal use, inclusive of the contested time period

---

[31] An insured bears the burden of proving coverage.  *See Royal Indemnity Co. v. Marshall*, 388 S.W.2d 176, 181 (Tex. 1965).

[32] *Minter*, 423 F.3d at 466 (citing *Hartford Accident & Indem. Corp. v. Lowery*, 490 S.W.2d 935, 937 (Tex. App. 1973)).

[33] 399 S.W.2d 343, 345 (Tex. 1966).

11

during which the accident occurred. Adams relies on language in a company handbook detailing the operating standards for using company vehicles, referred to as the Commercial Tire and Service Center's Associate's Expectation ("CT & SC"). It reads: "Personal use of company vehicles is to be kept to a minimum. Company vehicles are not to be used for vacation travel." The CT & SC was not, however, properly before the District Court since it was filed on June 9, 2004, one day after the expiration of Adams's final extension.[34] Thus, regarding express permission, Adams fails to raise a genuine issue of material fact on the record before the District Court, in response to Traveler's motion for summary judgment.

## 2. Implied permission

Adams also argues that a pattern of tolerated personal use creates implied permission.[35] Deposition testimony shows that Adams used the company truck on his lunch break, with the knowledge of his supervisors, to pick up food and dry cleaning—that he had at least implied permission to use the truck for personal errands.[36] We are persuaded that a fact question exists as to whether Adams,

---

[34] *See supra* II.

[35] "[M]utual acquiescence or lack of objection signifying assent may be evidence of implied permission." *Coronado v. Employers' Nat'l Ins. Co.*, 596 S.W.2d 502, 505 (Tex. 1979).

[36] *See Old. Am. County Mut. Fire Ins. Co. v. Renfrow*, 130 S.W.3d 70, 72 (Tex. 2004) (stating that even though employee did not have express permission, he might have had implied permission to drive to his girlfriend's house approximately one mile from his place of work).

12

as a general matter, had implied permission for personal use of the Goodyear truck.  But this does not end the inquiry.

B.  Scope of permission

The question remains whether Adams necessarily exceeded the scope of his implied permission.  The District Court held that Adams exceeded the sum of his permission—vitiating any express or implied permission as a matter of law.

As the District Court noted, Texas courts apply the minor deviation rule when determining whether an individual qualifies as an insured under a policy that covers permitted drivers.[37]  Texas courts have rejected the notion that any deviation from a company policy constitutes a gross violation.[38]  Under the minor deviation rule, "a person may deviate from the permitted usage of an insured vehicle and still be covered under an omnibus provision 'if the use is not a material or gross violation of the terms of the initial permission.'"[39]  Considerations for finding a deviation material include "the extent of deviation in actual distance or time, the purposes for which the vehicle was given, and other factors..."[40]  Consumption of alcohol constitutes an "other factor."[41]  "Some

---

[37]  *See Coronado*, 596 S.W.2d at 505.

[38]  *Tull v. Chubb Group of Ins. Cos.*, 146 S.W.3d 689, 696 (Tex. App. 2004).

[39]  *Renfrow*, 130 S.W.3d at 72 (quoting *Coronado*, 596 S.W.2d at 504).

[40]  *Id.*

[41]  *Minter*, 423 F.3d at 468-69.

deviations may be so minor that they do not create a fact issue whether permission was revoked; other more significant deviations may create such an issue; and some deviations may be so material that they revoke permission as a matter of law."[42]

Both the District Court and the defendants rely on cases, *Coronado* and *Renfrow*, that apply the minor deviation rule to situations involving express prohibitions against any personal use of company vehicles. No such express prohibition against personal use exists in the instant case. In *Minter*, explaining the existing Texas precedent, we recently applied the minor deviation rule to a situation in which the driver had permission to drive the truck to and from work and to park it overnight at his apartment.[43] The employer explicitly warned the driver employee that the vehicle was not to be used for personal errands.[44] The driver was given permission to deliver the truck to a facility in Decatur, Texas for scheduled maintenance on a Sunday morning.[45] On Saturday evening the employee drove to his sister's home so that she could follow him and drive him back to his residence in Bridgeport the following morning.[46] It developed that his sister could not give him a ride,

---

[42] *Coronado*, 596 S.W.2d at 506.

[43] *Minter*, 423 F.3d at 462.

[44] *Id.* at 466.

[45] *Id.* at 462.

[46] *Id.*

14

and, returning to his residence, the employee was involved in a traffic accident.[47]

Reversing the District Court's grant of summary judgment in favor of the insurer, we found a genuine issue of material fact as to whether the employee had express permission to drive the company truck to his sister's home, as testimony suggested that his boss had consented to the trip. We went on to say that a fact question also existed as to whether the driver had implied permission because the driver would presumably need to secure return transportation–arguably imparting implied permission to do so. Importantly, we noted that the driver's errand to his sister's home was not purely personal, as it related to the delivery of the truck in the morning.[48]

After analyzing the nature of the permission, we applied the minor deviation rule, stating that the driver's intoxication did not, as a matter of law, necessarily cause him to exceed the scope of his permission to use the company truck, for the purposes of insurance coverage under a similar omnibus clause.[49] Furthermore, we stated that the minimal time and distance involved weighed in the driver's favor, distinguishing both *Royal Indemnity* and *Renfrow* in which the distances traveled were forty and fifty miles,

---

[47] *Id.*

[48] *Id.* at 469.

[49] *Minter*, 423 F.3d at 468-70.

15

respectively.[50]

Thus, we consider the purpose of the errand, assess the distance and time involved, and weigh the additional factor of alcohol consumption.  The errand itself, purchasing cigarettes for his father, was personal in nature.  But the distances traveled were not so significant as to eviscerate Adams's implied permission—a matter of a few stop lights—particularly where Adams had express permission to drive the vehicle between Bryan and Houston.  Also, though Adams assumed that he should not drink and drive a company vehicle, reasonable people may disagree as to whether four hours of intervening sleep sufficiently reinvigorated Adams's implied permission.[51]  Moreover, though consumption of alcohol *while* driving is expressly prohibited in the driver's handbook,[52] drinking with a meal and subsequently driving is not proscribed.  Rather, the determinative factor is the driver's judgment and impairment.  Therefore, the simple fact that Adams consumed alcohol earlier that night, alone on these facts, is insufficient to sustain summary judgment.

Travelers heavily relies upon the time of day when the accident occurred to place the event outside the policy requirement

---

[50]  *Id.* at 468.

[51]  In *Royal Indemnity*, affirming the denial of coverage, the court did not rely on the fact that the driver had consumed several alcoholic beverages immediately prior to driving.  *Minter*, 423 F.3d at 469.

[52]  Travelers entered the driver's handbook into the record; it is distinct from the CT & SC.  *See supra* V(A)(1).

16

of permissive use. Admittedly, Adams stands on shaky ground, here.[53] The inference that Goodyear's acquiescence to Adams's personal use during his lunch hour created implied permission to purchase cigarettes at one or two in the morning is tenuous under Texas law. Still, we are not persuaded that the deviation is so egregious as to demand summary judgment given the lack of an express prohibition on personal use, the arguably implied permission to use the vehicle for personal errands during Adams's lunch break, and the minimal distances involved. No fact in the record, alone or in combination, necessitates a conclusion as a matter of law that Adams acted outside the scope of permissive use. In short, we are persuaded that there is a genuine issue of material fact whether Adams qualifies as an insured under the policy. We need not make an *Erie* guess.[54]

VI

Adams also alleges non-contractual claims depending on the yet

---

[53] *See Coronado*, 596 S.W.2d at 505 (Tex. 1980) ("Petitioner urges that Sotelo had implied permission to use the vehicle for this purely personal mission because of his employer's acquiescence or failure to object to similar use of the vehicle on prior occasions.... [W]e cannot say that these two incidents [seen drinking while using the company truck] justify an inference that the employer, by not taking more affirmative action in response thereto, impliedly granted Sotelo permission to use the company vehicle for an eight hour drinking spree wholly unrelated by time, place, or purpose from the objectives for which he was granted use of the vehicle").

[54] *Minter*, F.3d at 460, 470 (stating that "on this summary judgment record, genuine issues of material fact preclude reaching [the] *Erie* question").

17

unresolved coverage question.[55]  Therefore, summary judgment is inappropriate as to the claims pursuant to the Texas Insurance Code, the Texas Deceptive Trade Practices Act, and common law bad faith.  Additionally, Travelers gave only cursory attention to the allegation of fraud in its motion for summary judgment, and the District Court's memorandum opinion accompanying its order made no mention of it.[56]  This claim remains to be adjudicated.

REVERSED AND REMANDED.

---

[55]  *Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189 (Tex. 1998); *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338 (Tex. 1995); *Lennar Corp. v. Great Am. Ins. Co.*, 2005 Tex. App. LEXIS 4214.

[56]  *See Johnson & Higgins v. Kenneco Energy*, 962 S.W.2d 507, 524 (Tex. 1998) (explaining the elements of common law fraud).

JERRY E. SMITH, Circuit Judge, dissenting:

I respectfully dissent, because the panel majority errs in holding that there is a genuine issue of material fact as to whether Adams had implied permission to use the truck in the manner that he did at the time of the accident. Adams only had implied permission to use the truck for personal purposes or errands during "lunch hour," not during the drive between Bryan and Houston or after he arrived home in Houston (*i.e.*, not after hours or before work).

There is no evidence whatsoever of implied permission to use the truck for personal errands after hours; the only permission to use it after hours was the express permission to drive home, which was not a permission to run errands on the way home or once Adams arrived home. Adams admitted that his supervisors were unaware that he was using the company vehicle after hours for the purpose of shopping; he testified that no one at Goodyear knew he had been driving the truck to his father's house or had authorized him to do so.

The opinion also hinges on "the minimal distances involved," but that is not a significant fact here, where, as the majority admits, the timing and the purpose of the trip suggest that the deviation is not minor. Although *Old Am. County Mut. Fire Ins. Co. v. Renfrow*, 130 S.W.3d 70, 72 (Tex. 2004), and other cases did involve more significant distances, deviations material as a matter

of law have been found in cases with distances similar to those here.

For instance, in *Coronado v. Employers' Nat'l Ins. Co.*, 596 S.W.2d 502, 503 (Tex. 1979), the distance was three to four miles. Here the distances appear to be similar; as the majority explains, Adams's house, his father's house, and the convenience store are all within a ten-minute drive of one another. Looking at distances as "minimal" as those in this case, the Texas Supreme Court in *Coronado* held that the trip was "wholly unrelated by time, *place*, or purpose from the objectives for which he was granted use of the vehicle." 596 S.W.2d at 505 (emphasis added).

Although the majority devotes significant consideration to *Minter*, 423 F.3d at 468–70, which also involved minimal distances, that case is distinguishable: There, the employee had to deliver the truck to a facility in Decatur for scheduled maintenance, so the employee drove it to his sister's house in order that she follow him and drive him back to his residence. As that court repeatedly stressed, the drive to the sister's home involved a business purpose, because it was in the interest of the employer that the vehicle be serviced and that the employee receive a ride back from the service location.

In contrast, here the late-night errand was a purely personal trip, as the majority acknowledges; Adams no longer had any tires in his possession. Because the majority acknowledges that the pur-

20

pose and time of the deviation were unrelated to the objectives for which Adams was granted the use of the vehicle, and given that the same distance is involved as in *Coronado,* I do not see how that case can be distinguished:  The test for a material deviation is precisely based on these three elements: time, place and purpose. For that reason, I respectfully dissent.