Grant and Danielle **WALKER**,
**Plaintiffs**

v.

**NATIONWIDE PROPERTY AND CASUALTY INSURANCE CO., Defendant.**

**Civil Action No. 1:12–CV–1124–JRN.**

United States District Court,
W.D. Texas,
Austin Division.

Jan. 6, 2014.

Guillermo Ochoa–Cronfel, The Cronfel Firm, Nicholas S. Bressi, Hohmann, Taube & Summers, LLP, Austin, TX, for Plaintiffs.

Christopher W. Martin, Joseph R. Matetich, Kennetha W. Lucas, Patrick M. Kemp, Martin, Disiere, Jefferson & Wisdom, L.L.P., Austin, TX, for Defendant.

## *ORDER*

JAMES R. NOWLIN, District Judge.

Before the Court is Defendants' Motion for Partial Summary Judgment (Dkt. No. 24), along with Plaintiffs' Response (Dkt. No. 25) and Defendant's Reply (Dkt. No. 27). For reasons set out below, the Court GRANTS Defendants Motion.

### I.   Overview

Plaintiffs allege that Defendant Nationwide breached their homeowners' policy by denying Plaintiffs' claim for foundation damage. Nationwide asks this Court to grant summary judgment as to the maximum amount Plaintiffs may recover under their breach of contract claim for monetary damages arising out of foundation damage to their residence.

Nationwide further argues that it is entitled to summary judgment on all of Plaintiffs DTPA and Texas Insurance Code claims.

### II.   The Policy Contract [1]

The relevant portions of the Walker Policy Contract read as follows:

### SECTION I—PROPERTY COVERAGES

### COVERAGE A—DWELLING

We cover:

---

1.   See Dkt. No. 24–1 Ex. A

1.   the dwelling on the residence premises used mainly as your private residence, including attached structures and attached wall-to-wall carpeting.

### Covered Causes of Loss (Section 1) COVERAGE A—DWELLING

We cover accidental direct physical loss to property described in Coverages A and B except for losses excluded under Section 1–Property Exclusions.

### Property Exclusions (Section 1)

1.   We do not cover loss to any property resulting directly or indirectly from any of the following.  Such a loss is excluded even if another cause or event contributed concurrently or in any sequence to cause the loss.

a) Earth Movement and Volcanic Eruption.   Earth Movement means:   earth movement due to natural or unnatural causes, including mine subsidence;  earthquake;  landslide;  mudslide;  earth shifting, rising, or sinking.

3.   We do not cover loss to property described in Coverages A and B resulting directly from any of the following:

e) continuous or repeated seepage or leakage of water or steam over a period of time from a heating, air conditioning or automatic fire protective sprinkler system; household appliance; or plumbing system.  Continuous or repeated seepage or leakage from, within, or around and shower stall, shower tub, tub installation or other plumbing fixture, including their walls, ceilings, or floors is also excluded.

f) (6) settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs, or ceiling.

Plaintiff also augmented the above language by adding a Dwelling Foundation Endorsement.   The relevant portions of that endorsement read as follows:

### DWELLING FOUNDATION ENDORSEMENT[2]

SECTION 1—ADDITIONAL PROPERTY COVERAGES

Dwelling Foundation Coverage.  We cover settling, cracking, bulging, shrinking, or expansion of foundations, floor slabs or footings that support the dwelling caused by seepage or leakage of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system.

This coverage includes the cost of tearing out and replacing any part of the building necessary to repair the system from which the leakage or seepage occurred.

We do not cover loss to the system from which the water or steam escaped.

Our limit of liability for this coverage will not exceed an amount equal to 15% of the Coverage A (Dwelling) limit of liability at the time of loss.

### III.   Standard of Review

The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.   See FED.R.CIV.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Washburn v. Harvey,* 504 F.3d 505, 508 (5th Cir.2007).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  When ruling on a motion for summary judgment, the court is required to

**2.**  *Id.*

view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Washburn,* 504 F.3d at 508.

▮ Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary-judgment evidence of the existence of a genuine fact issue. *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Mere conclusory allegations are not competent summary-judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 343 (5th Cir.2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary-judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.,* 465 F.3d 156, 164 (5th Cir.2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548.

## IV. Discussion

The parties agree that Dwelling Foundation Endorsement # H–7074 limits the amount payable under the Walker's policy to 15% of the $250,800.00 Dwelling Limit ($37,620). Plaintiffs, however, argue that Defendant is also contractually obligated to cover any loss or damage that occurs as the result of any necessary foundation repairs.

### A. Plaintiffs' breach of contract claim for monetary damages for foundation damage to their residence is limited to $37,620.00.

▮ The Policy at issue in this case in an HO–A policy that includes exclusions 1(a), 3(e), and 3(f)(6). Plaintiffs assert that the DFE creates an exception to 3(f)(6) for "settling, cracking, shrinking, bulging or expansion of pavements, patios, walls, floors, roofs, or ceilings." The Court is at a loss to understand how Plaintiffs' arrived at this conclusion based on the language of the contract at issue in this case. The DFE explicitly states that Defendant's liability for foundation damage "will not exceed an amount equal to 15% of the Coverage A (Dwelling) limit of liability at the time of loss." (NW/Walker Policy 043). Where, as here, the language in a contract is clear and unambiguous, the Court is obliged to enforce the contract as written. *See National Union Fire Ins. Co. v. Hudson Energy Co.,* 811 S.W.2d 552, 555 (Tex. 1991); *see also Puckett v. U.S. Fire Ins. Co.,* 678 S.W.2d 936, 938 (Tex.1984).

By its own terms, the DFE only applies to settling, cracking, shrinking, bulging, or expansion of the *foundations, floor slabs, or footings* caused by water from a plumbing system. (Dkt. No. 24–1). Additionally, exclusion 3(f)(6) applies whenever the

DFE applies, meaning that Nationwide is not obliged to cover "settling, cracking, shrinking, bulging, or expansion of pavement, patios, walls, floors, roofs, or ceilings." (*Id.*). Plaintiffs nevertheless posit that the language of the Walker policy entitles Plaintiffs to coverage for any cracking of walls, floors, and ceilings where the damage ensues from foundation movement caused by a plumbing leak. In support of this assertion, Plaintiffs provide a string citation to four separate state and federal court cases: *Balandran v. Safeco Ins. Co. of America,* 972 S.W.2d 738 (Tex. 1998); *State Farm Lloyds v. Nicolau,* 951 S.W.2d 444 (Tex.1997); *Telepak v. United Serv. Auto. Ass'n,* 887 S.W.2d 506, 507 (Tex.App.-San Antonio 1994, writ denied); and *Burditt v. West American Ins. Co.,* 86 F.3d 475 (5th Cir.1996). These cases are distinguishable and even if this were not the case, they still do not support Plaintiffs' assertion that they are entitled to ensuing loss damages in this case.[3]

On the subject of damage caused by leaks, the Walker policy is straightforward. It states that "if any of items (f)(1) through (8) cause water to escape from a plumbing, heating, air conditioning or fire protective sprinkler system or household appliance, we cover loss *caused* by the water and *not otherwise excluded.*" (Dkt. No. 25–1, Ex. 1A at D4) (emphasis added). The question then becomes whether any exclusions apply to the Walkers' claims. Two clearly do: 3(e) and 3(f)(6). Exclusion 3(e) states that Nationwide does not have to provide coverage for damage resulting directly from "continuous or repeated seepage or leakage of water or steam over a period of time from ... [a] plumbing system" or for any damage caused by "[c]ontinuous or repeated seepage or leakage from, within, or around and shower stall, shower tub, tub installation or other plumbing fixture, including their walls, ceilings, or floors." (Dkt. No. 25–1, Ex. 1A at D4). The Walker's claim falls squarely within this exclusion.[4]

3(f)(6) further stymies Plaintiffs attempt to recover for ensuing damages. It explicitly states that Nationwide does not have to cover settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs, or ceiling. (*Id.*).

Put simply, the Walkers are contractually barred from recovering the ensuing loss damages that they now seek. Accordingly, the Court holds that the maximum amount

---

**3.** *Balandran* interprets "ensuing loss caused by ... water damage if the loss would otherwise be covered under this policy." *Balandran* at 739. Meanwhile, *Nicolau* does not involve an insurance coverage dispute but rather focuses on extra-contractual damages. In its opinion, the Court notes that the policy involved in the case excluded "settling, cracking, bulging, shrinkage, or expansion of foundations", but an express exception included in the contract mandated that the exclusion did "not apply to losses caused by an 'accidental discharge, leakage, or overflow of water' from within a plumbing system." *Nicolau* at 446. The Court in *Telepak* held that an insured has the burden of proof to prove an exception to an exclusion applies. The policy language at issue in that case read "[t]he foregoing Exclusions ... shall not apply to Accidental dis-

charge, leakage or overflow of water of steam from within a plumbing system." *Telepak* at FN 1. Finally, the Court in *Burditt* was tasked with interpreting a policy which stated "[t]his policy does not insure against ... Loss by ... settling, shrinkage, or expansion in foundations, walls, floors, or ceilings; this Exclusion, however, shall not apply to loss by ... water damage." *Burditt* at 476.

**4.** Indeed, the case law actually cuts against Plaintiffs proffered interpretation of the Walker policy. In *General Star Indem. Co. v. Sherry Brooke Revocable Trust,* Judge Justice interpreted a policy exclusion similar to the one created by 3(e) and held that it did not cover ongoing plumbing leaks. 243 F.Supp.2d 605, 609–12 (W.D.Tex.2001).

that Plaintiffs may recover under their claim for recovery for alleged foundation damage is $37,620.00.

### B. Defendants are entitled to summary judgment on all of Plaintiffs causes of action based on the allegation that Defendants failed to conduct a reasonable investigation.

██ Defendant argues that the Court should dismiss Plaintiffs' claims related to Nationwide's alleged failure to conduct a reasonable investigation of Plaintiffs' claim. The Court agrees. When Plaintiffs originally filed their claim with Defendant, Nationwide dispatched engineers and plumbers to investigate the cause of the foundation damages to Plaintiffs' property. Both the engineer and the plumber concluded that the foundation movement was not the result of plumbing leaks and consequently, Nationwide declined to pay Plaintiffs' claim.

In this case, Plaintiffs allege that Nationwide failed to perform a reasonable investigation since Demoss Plumbing—which performed part of Nationwide's original investigation of the Walker's claim—did not detect a leak under the Walker's home when it conducted its investigation. Unfortunately, Plaintiffs do not marshal a single piece of evidence in support of this allegation.

Plaintiffs' expert plumber, Brad Casebier, testified that there were no problems with Demoss Plumbing's original investigation. (Dkt. No. 24–B at 18:10–20:6). Obviously, this does not support Plaintiffs' allegation that Nationwide did not conduct a reasonable investigation.

Plaintiffs concede that Casebier's testimony does not help their cause, but they argue that the testimony of their expert engineer—James H. Andrews—along with an affidavit filed by Plaintiff Grant Walker combine to raise a genuine issue of material fact as to whether Nationwide conducted a reasonable investigation. The Court disagrees. During his deposition, counsel asked Andrews whether he had "a problem with the way the claim was handled, as in the inspection-investigation process?" (Dkt. No. 24–C at 151:3–151–6). Andrews answered "[n]o." (*Id.*). That Andrews also testified that he would have liked the original investigator to state what he believed caused the damage rather than simply determining (as the original engineer did) that it was not leaking water does not help Plaintiffs' cause since Andrews' opinion on whether the investigation was perfect is not important. What is important is whether he believes that Nationwide conducted a reasonable investigation and his testimony clearly indicates that he believed the Nationwide investigation was reasonable.

All of this leaves only Plaintiff Walker's own affidavit, which is irrelevant to the Court's analysis since Walker is not entitled to offer an expert opinion on the subject of whether or not Nationwide conducted a reasonable investigation.

For all of the above reasons, the Court finds that there is no evidence to suggest that Defendants violated Tex. Ins.Code 541.060(a)(7) by failing to perform a reasonable investigation and accordingly, Defendants are entitled to summary judgment on this point.

### C. Defendants are entitled to summary judgment on Plaintiffs' DTPA causes of action since the record contains no evidence that the alleged misrepresentations caused Plaintiffs harm.

Plaintiffs assert that Nationwide violated the DTPA on two separate occasions. First, they allege that Nationwide repre-

sented that coverage for the foundation and ensuing damage would be covered when it delivered the Policy to the Walkers. Plaintiffs also allege that the Nationwide adjuster assigned to the claim told Plaintiffs that the full policy coverage limit applied to any damages to the house.

■ The elements of a DTPA claim are: (1) the plaintiff was a consumer; (2) the defendant either engaged in false, misleading, or deceptive acts (i.e., violated a specific laundry-list provision of the DTPA) or engaged in an unconscionable action or course of action; and (3) the violation or unconscionable action was a producing cause of the Plaintiffs' injury. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex.1996).

■■ "[B]oth the Insurance Code and the Deceptive Trade Practices Act require proof that the defendant's conduct was the cause in fact of actual damages." *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir.1999). Plaintiffs have not presented any evidence to support their claim that Nationwide ever misrepresented the coverage under the Policy prior to the policy being issued. Along the same lines, while Plaintiffs do present limited evidence to suggest that the Nationwide adjuster assigned to Plaintiffs' claim misrepresented the scope of coverage that Plaintiffs are entitled to under the Policy, the record does not contain any evidence suggesting that these post-loss misrepresentations were the producing causes of any of the damages that Plaintiffs now allege to have suffered. Since Plaintiffs have not presented any evidence that Nationwide (or its representatives) misrepresentations caused Plaintiffs' injuries, the Court dismisses Plaintiffs' DTPA causes of action.

## V.  Conclusion

For the reasons set out above, the Court GRANTS Defendants Motion for Partial Summary Judgment. The Court ORDERS that (1) Plaintiff's breach of contract claim for monetary damages for foundation damage to their residence is limited to $37,620; (2) Plaintiffs' causes of action under Insurance Code Section 541 are DISMISSED with prejudice; and (3) Plaintiffs' causes of action under the Deceptive Trade Practices Act are DISMISSED with prejudice.