In the

# United States Court of Appeals
### For the Seventh Circuit

No. 05-4744

WATERLOO FURNITURE COMPONENTS, LTD.,

*Plaintiff-Appellee*,

*v.*

HAWORTH, INC.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 0507—**Elaine E. Bucklo**, *Judge.*

ARGUED SEPTEMBER 15, 2006—DECIDED OCTOBER 30, 2006

Before FLAUM, *Chief Judge,* and KANNE and SYKES, *Circuit Judges.*

FLAUM, *Chief Judge.* On October 29, 1992, Haworth, Inc. ("Haworth") entered into an agreement with Waterloo Furniture Components, Ltd. ("Waterloo"), granting Waterloo a license to Haworth's Patent No. 4,616,798 ("the '798 patent"). The agreement included a "most favored nations" provision that required Haworth to give Waterloo the benefit of any more favorable royalty rates that Haworth might grant to another licensee under the '798 patent. Haworth's patent expired on October 14, 2003. On March 24, 2004, Haworth executed a settlement agreement with a third party, SoftView Computer Products Corporation ("SoftView"), for past infringement of the '798

patent. Waterloo learned of the settlement agreement and brought suit against Haworth alleging breach of contract. The district court stayed discovery in the case and granted Haworth's motion for summary judgment holding that Waterloo's rights under the "most favored nations" clause ended on the day the parties' agreement expired, October 14, 2003. For the following reasons, we affirm the judgment of the district court.

## I. BACKGROUND

Waterloo is a manufacturer of articulated keyboard support devices with its principal place of business in Ontario, Canada. Haworth is an office furniture systems manufacturer with its principal place of business in Michigan. Haworth owned the '798 patent, which was for an adjustable support for a computer keyboard. The device attaches to the underside of a desk, allowing a computer keyboard to swing out from under the desk and be adjusted to various heights and positions. The patent issued on October 14, 1986 and expired on October 14, 2003.

In December 1992, Haworth granted a license to Waterloo under the '798 patent ("the Haworth/Waterloo Agreement") to resolve an infringement claim that Haworth brought against Waterloo. The parties chose Michigan law to govern the contract. Under the "Grant and Term" section, the contract provided, "This Agreement shall be effective only when executed by both parties and shall continue for the full term of said Licensed Patent, unless this Agreement is earlier terminated pursuant to the provisions hereof." The Haworth/Waterloo Agreement also contained a "most favored nations" clause that provided:

> If, during the term of this Agreement, Haworth grants a license to thereafter make, use or sell under the '798 patent to a direct competitor of Waterloo at a more

favorable royalty than that contained in Section IV-1 hereof . . . then such more favorable royalty will be automatically offered to Waterloo . . . The intent of Haworth and Waterloo is to provide that Waterloo is treated no less favorably than direct competitors of Waterloo in regard to licensing of the '798 patent . . . In the event that Haworth enters into any license agreement under the '798 patent with any direct competitor of Waterloo, then Haworth shall provide written notice of such agreement and the terms thereof to Waterloo within thirty days following the execution thereof.

In 1997, a third party, SoftView, filed a declaratory judgment action in New York federal court against Haworth, arguing that SoftView was not infringing the '798 patent. In June 1998, Haworth asserted a counterclaim against SoftView, alleging that SoftView had infringed the '798 patent. The case was litigated for over five and a half years.

On December 9, 2003, Haworth and SoftView reached an agreement in principle to settle the case. The parties negotiated the terms of a formal settlement between December 2003 and March 2004 and executed a final agreement on March 24, 2004 (the "Haworth/SoftView Agreement"). Waterloo learned about the agreement and requested a copy from Haworth. Haworth responded that its agreement with SoftView was confidential.

On March 15, 2005, Waterloo filed a first amended complaint in this case alleging breach of contract. On May 4, 2005, Haworth moved for summary judgment. On May 9, Waterloo served discovery, including a request that Haworth produce a copy of the Haworth/SoftView Agreement. On May 23, the district court *sua sponte* stayed all discovery pending its ruling on the summary judgment motion. In support of its motion for summary judgment, Haworth submitted the affidavit and reply affidavit of

James R. Wiersma. Wiersma was one of the Haworth employees responsible for negotiating the Haworth/SoftView Agreement. Waterloo filed three related motions in conjunction with its response: 1) a motion to strike Wiersma's affidavit under the Best Evidence Rule; 2) a motion to deem certain allegations admitted pursuant to Federal Rule of Civil Procedure 8(d); and 3) a motion to refuse application for judgment pursuant to Federal Rule of Civil Procedure 56(f).

On December 6, 2005, the district court granted Haworth's motion for summary judgment. *See Waterloo Furniture Components, Ltd. v. Haworth, Inc.*, 402 F. Supp. 2d 950, 953 (N.D. Ill. 2005). The court found that the Haworth/Waterloo Agreement terminated October 14, 2003, the date the '798 patent expired. Because the Haworth/Softview Agreement was not executed until after the expiration of the '798 patent, the district court held that Haworth's obligations under the Haworth/Waterloo Agreement had ended. The district court also held that "the status of the Agreement as a license (or not) is irrelevant." *Id.* Finally, the district court denied Waterloo's related motions to strike, to refuse application for judgment, and to deem allegations admitted.

## II. DISCUSSION

On appeal, Waterloo argues that the district court erred by interpreting the Haworth/Waterloo Agreement as terminating on October 14, 2003, and further argues that the Haworth/SoftView Agreement constituted a license for past infringement violating the Haworth/Waterloo "most favored nations" clause. Waterloo also argues that the district court erred by denying discovery before granting Haworth summary judgment, and by denying its Rule 56(f) motion. Finally, Waterloo argues that Wiersma's affidavit

violated the Best Evidence Rule. We will address each argument in turn.

A.

Waterloo argues that the district court erred in ruling that the Haworth/Waterloo Agreement terminated before Haworth executed its agreement with SoftView. We review a district court's grant of summary judgment de novo. *See, e.g., Matuszak v. Torrington Co.*, 927 F.2d 320, 322 (7th Cir. 1991). Summary judgment is not warranted when there are genuine issues of material fact with respect to the interpretation of a contract. *See Diehl v. Twin Disc, Inc.*, 102 F.3d 301, 305 (7th Cir. 1996). "[A] contract's meaning is a matter of law, and where there is no contractual ambiguity, there is no resort to extrinsic evidence, hence no factual dispute to preclude summary judgment." *Id.* (citing *GCIU Employer Ret. Fund v. Chi. Tribune Co.*, 66 F.3d 862, 864 (7th Cir. 1995)).

The plain language of the Haworth/Waterloo Agreement makes clear that it terminated on October 14, 2003, the same day that the '798 patent expired. Under Michigan law, which controls the contract, a court is required to interpret an unambiguous contract as a matter of law. *UAW-GM Human Res. Ctr. v. KSL Rec. Corp.*, 579 N.W.2d 411, 414 (Mich. Ct. App. 1998). A contract is only ambiguous when its words may reasonably be understood in different ways. *Raska v. Farm Bureau Mut. Ins. Co.*, 314 N.W.2d 440, 441 (Mich. 1982).

Section III-4 states that "this Agreement . . . shall continue for the full term of said Licensed Patent, unless this Agreement is earlier terminated pursuant to the provisions hereof." This provision is found under the heading "Grant and Term" and clearly states the duration of the contract. Moreover, the contract provides no

other termination date. Section III-4 is not susceptible to any other reasonable interpretation, and thus, its plain language terminates the agreement upon expiration of the '798 patent.

Waterloo advances five arguments as to why the above interpretation of Section III-4 is incorrect. Each is without merit. First, Waterloo claims that interpreting the Haworth/Waterloo Agreement as terminating on October 14, 2003 conflicts with the intent of the parties as described in Section VII-2 of the Agreement. Waterloo argues that the district court's interpretation of the contract permits Haworth to license a competitor's past sales at more favorable terms, without notifying Waterloo. As we discuss in Part B *infra*, however, it is not possible to license a patent past its expiration. In addition, the parties' intent that "Waterloo is treated no less favorably than direct competitors of Waterloo in regard to licensing of the '798 patent," only provides insight into the parties obligations during the term of the contract. It does not extend the Agreement past its express termination date.

Second, Waterloo argues that even if the Haworth/ Waterloo Agreement terminated on October 14, 2003, Haworth's obligations under Section VII-2 continued past that date. This argument fails because an expired contract releases all its parties from their respective contractual obligations. *See Advanced Plastics Corp. v. White Consol. Indus., Inc.*, 828 F. Supp. 484, 488 (E.D. Mich. 1993) (granting summary judgment on plaintiff's breach of contract claim where the contractual obligations of the parties simply expired prior to the alleged breach). The first sentence of the most favored nations provision states, "If, during the term of this Agreement, Haworth grants a license . . . at a more favorable royalty . . . then such more favorable royalty will be automatically offered to Waterloo . . . ." Consequently, the section's first sen-

tence specifically limits Haworth's obligations under the most favorable nations clause to *the term of the Agreement*. As discussed above, the term of the Agreement ended on October 14, 2003.

Third, Waterloo argues that the district court's interpretation of Section III-4 renders Section V-6 of the Agreement superfluous. Section V-6 states, "In any case Waterloo's obligation to pay royalties shall cease as of the day the '798 patent expires." Waterloo contends that if Section III-4 of the Agreement terminated on October 14, 2003, there would be no reason to reiterate the termination date. We reject this argument because Section V-5, which precedes Section V-6, details several scenarios in which Waterloo's obligation to pay royalties would end before that termination date. Consequently, Section V-6 simply clarifies the expiration date.

Fourth, Waterloo claims that the contract's definition of the term "agreement year," as "a twelve (12) month interval extending from either the effective date hereof or the annual anniversary of the effective date hereof . . .," operates to extend the contract. We reject this argument as well. The term "agreement year" only appears in the contract with reference to determining the royalty rates in any given year. The contract required Waterloo to pay one royalty rate for the first 100,000 units sold in any agreement year, a slightly lower rate for the second 100,000 units sold in the agreement year, and yet a slightly lower rate for any units sold above 200,000 units. Thus, the term "agreement year" is defined for purposes of determining royalty rates and has no relation to the contract's duration. The term "agreement year" is not found under the contract's "Grant and Term" section and cannot be construed to contradict the plain language of Section III-4.

Finally, Waterloo argues that Haworth's actions constitute acquiescence that the most favored nations clause

extended beyond the term of the '798 patent. Waterloo argues that in response to its requests to review a copy of the Haworth/SoftView Agreement, Haworth only claimed that the Agreement was confidential and did not assert to Waterloo, at that time, its belief that the most favored nations clause had expired. We reject this argument. Because Section III-4 of the Agreement is clear and unambiguous, any of the parties' subsequent actions are entirely irrelevant. *See*, *e.g.*, *Prentis Family Found., Inc. v. Barbara Ann Karmanos Cancer Inst.*, 698 N.W.2d 900, 914 (Mich. Ct. App. 2005) ("When the contract is unambiguous, the construction is gleaned from the actual language used."); *L. & S. Bearing Co. v. Morton Bearing Co.*, 93 N.W.2d 899, 901 (Mich. 1959) (holding that "where a written contract is not ambiguous . . . extraneous matter will not be considered" and "subsequent acts of the parties" are irrelevant).

B.

The Haworth/Waterloo most favored nations clause is limited to "licenses to . . . make, use or sell under the '798 patent . . . ." As a result, if the Haworth/Softview Agreement is not a "license," Waterloo's claim that Haworth breached the most favored nations clause must fail. As far as we can tell, no court has determined whether a settlement for past infringement entered into after the patent's expiration constitutes a license.[1] We hold today that such

---

[1] Courts are divided on the issue in cases where the settlement agreement is entered into before the patent's expiration. On the one hand, this Court and the Second Circuit have each held that payment designed to compensate solely for past infringement is not a license and does not implicate a "most favored nations" provision. *See Studiengesellschaft Kohle v. Novamont Corp.*, 704 F.2d 48, 52 (2d Cir. 1983)*; Ransburg Electro-Coating*

(continued...)

a settlement agreement is not a license.

A "patent law license" is "a written authority granted by the owner of a patent to another person empowering the latter to make or use the patented article for a limited period or in a limited territory." *Black's Law Dictionary* 1068 (4th ed. 1951). Courts have recognized the prospective quality of a patent license, which allows another party to use the patentee's property in the future without fear of suit. *See Wang Labs., Inc. v. Oki Elec. Ind. Co., Ltd.*, 15 F. Supp. 2d 166, 172 (D. Mass. 1998) ("there is authority to the effect that the concepts of both royalty and license are necessarily prospective, rendering a 'retroactive royalty agreement' a legal nullity"); *Searle Analytic Inc. v. Ohio-Nuclear, Inc.*, 398 F. Supp. 229, 231 (N.D. Ill. 1975) ("A license . . . is prospective in operation"); *Universal Oil Prods. Co. v. Vickers Petroleum Co. of Del.*, 19 A.2d 727, 729 (Del. Super. 1941) ("It is somewhat difficult to understand what is meant by a 'retroactive implied license.' A license in its very nature is prospective in operation."); *Raytheon Mfg. Co. v. Radio Corp. of Am.*, 190 N.E. 1, 5 (Mass. 1934) ("The word 'royalty' commonly imports payment for permissive or lawful use of a property right, and not damages for a pirated or illegal appropriation of such right."). However, once a patent expires, the right to exclude others expires, and the right to make, use or sell the patented invention becomes "public property." *Nat'l Bus. Sys., Inc. v. AM*

---

[1] (...continued)
*Corp. v. Spiller & Spiller*, 489 F.2d 974, 977 (7th Cir. 1973). On the other hand, the Sixth Circuit and the Federal Circuit have held that a release compensating a party for past infringing use of a patent can have the effect of and be construed as a license for purposes of a "most favored nations" clause. *See Studiengesellschaft Kohle v. Hercules, Inc.*, 105 F.3d 629, 634 (Fed. Cir. 1997); *Shatterproof Glass Corp. v. Libbey-Owens-Ford Co.*, 482 F.2d 317, 318 (6th Cir. 1973).

*Intern, Inc.*, 743 F.2d 1227, 1238 n.10 (7th Cir. 1985). Therefore, after a patent's expiration there is nothing left for the patent holder to license.

In this case, the '798 patent expired on October 14, 2003. After that date, Haworth no longer had anything left to license. For this reason, the March 2004 Haworth/ SoftView Agreement was not a license.

C.

Waterloo argues that the district court erred by holding that no discovery was necessary before granting summary judgment in favor of Haworth. However, Rule 56 does not require that discovery take place in all cases before summary judgment can be granted. *See* Fed. R. Civ. P. 56. In fact, this Court has noted that "the fact that discovery is not complete—indeed has not begun—need not defeat [a motion for summary judgment]." *Am. Nurses Ass'n. v. Illinois*, 783 F.2d 716, 729 (7th Cir. 1986). Thus, the mere fact that the district court granted Haworth's summary judgment motion prior to allowing any discovery is irrelevant.

Waterloo also asserts that the district court erred in denying Waterloo's 56(f) motion. We review a district court's denial of a Rule 56(f) motion for abuse of discretion. *See Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1056 (7th Cir. 2000). Rule 56(f) requires a party to state the reasons why it cannot adequately respond to the summary judgment motion without further discovery and must support those reasons by affidavit. *Chambers v. Am. Trans Air, Inc.*, 17 F.3d 998, 1002 (7th Cir. 1994).

In support of its Rule 56(f) motion, Waterloo submitted attorney Rhett Dennerline's affidavit, which speculated that further discovery would demonstrate that the Haworth/SoftView Agreement was a retroactive license. As

discussed above, however, a settlement for past infringement entered into after the patent's expiration can never be a license. *See supra* Part B. Additionally, Haworth's obligations under the Haworth/Waterloo Agreement's most favored nations clause terminated when the '798 patent expired. Because Dennerline's affidavit did not assert that further discovery would indicate that the Haworth/Waterloo Agreement would terminate on a date later than October 14, 2003, the district court did not abuse its discretion in denying Waterloo's 56(f) motion.

D.

Finally, Waterloo claims that the district court erred in rejecting its best evidence argument. In support of its summary judgment motion, Haworth submitted the affidavit and reply affidavit of James R. Wiersma, who testified that "Haworth has never licensed the '798 patent to SoftView" and asserted that Haworth finalized its agreement with SoftView in March 2004. Waterloo argues that the district court abused its discretion by not requiring that the summary judgment record contain the original or a copy of the Haworth/SoftView Agreement as the best evidence of Wiersma's assertions. This Court's standard of review for determining whether the district court erred by not excluding evidence is abuse of discretion. *Taylor v. Nat'l R.R. Passenger Corp.*, 920 F.2d 1372, 1375 (7th Cir. 1990).

The Best Evidence Rule provides that "the production of the original document is required to prove the contents of a writing." Fed. R. Civ. P. 1002. If a witness's testimony is based on his first-hand knowledge of an event as opposed to his knowledge of the document, however, then Rule 1002 does not apply. *Simmons v. Allsteel, Inc.*, No. 95 C 3049, 1999 WL 1045214, *2 (N.D. Ill. Nov. 12, 1999). Wiersma's statements are based on his personal knowledge of the negotiations between Haworth and SoftView, not on his

knowledge of the Haworth/SoftView Agreement.[2] Moreover, Wiersma's statement that the Agreement was not a license was based on his belief that a settlement agreement was not a license. Because neither of the allegedly objectionable statements relates to the contents of the Haworth/SoftView Agreement, the Best Evidence Rule does not apply to Wiersma's testimony. For this reason, the district court did not abuse its discretion in denying Waterloo's motion to strike the Wiersma affidavit.

## III. Conclusion

For the reasons set forth in this opinion, the judgment of the district court is AFFIRMED.

---

[2] Wiersma testified that on December 9, 2003, he "participated in an all-day negotiating session in Chicago, at which attorneys for Haworth and SoftView, along with representatives of the two companies, reached an agreement in principle to settle the case." Moreover, Wiersma stated that "between December 9, 2003 and March 2004, Haworth and SoftView negotiated the terms of a formal Settlement Agreement, which was executed by the parties on or about March 24, 2004."

No. 05-4744                                                13

A true Copy:

    Teste:

                        _____
                        *Clerk of the United States Court of*
                        *Appeals for the Seventh Circuit*