IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 23, 2008

No. 07-10130

Charles R. Fulbruge III
Clerk

BARNEY HOLLAND OIL COMPANY,

Plaintiff-Appellant,

v.

FLEETCOR TECHNOLOGIES, INC
FLEETCOR TECHNOLOGIES OPERATING COMPANY, LLC,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:06-CV-183

Before JONES, Chief Judge, and GARWOOD and JOLLY, Circuit Judges.

PER CURIAM:[*]

Appellant challenges the district court's grant of summary judgment on its breach-of-contract and tort claims, arguing that the district court erred by (1) prematurely ending discovery; (2) concluding there were no disputed issues of material fact; and (3) concluding appellee had not terminated the parties' license agreement. Because the district court's judgment is supported by the record, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## BACKGROUND

Defendant-appellees FleetCor Technologies, Inc. and FleetCor Technologies Operating Company, LLC (collectively "FleetCor"), own and operate a fuel-management system under the name "Fuelman" marketed to businesses and government entities that operate fleets of vehicles. FleetCor provides Fuelman cards to participating fleet owners to give to their drivers. The cards function like normal credit cards and can be used to purchase fuel and maintenance services at thousands of merchants around the country that have agreed to accept the Fuelman card. But unlike normal credit cards, Fuelman cards have a number of built-in limitations, called "pre-purchase controls," on how they can be used. Fleet-owners generally set limits on what can be purchased with Fuelman cards, as well as permissible locations for purchase. For instance, a fleet-operator could limit the Fuelman card's use to a specified grade of a gasoline at a particular gasoline vendor such as ExxonMobil. Not surprisingly, the Fuelman system's chief selling point is the ability to prevent drivers and employees from using company resources to purchase lottery tickets, beer, cigarettes, or even gasoline for their personal vehicles.

FleetCor originally marketed Fuelman indirectly through licensees in 30 territories and directly in three territories. Each licensee was responsible for developing client relationships with both merchants and fleet owners, but FleetCor continued to operate the computer system that processed the purchases made with the Fuelman card. Each licensee was given the exclusive right to market the Fuelman system in its assigned territory.

One original licensee, plaintiff-appellant Barney Holland Oil Co. ("BHOC"), was licensed to market the Fuelman system in the Dallas/Fort Worth ("DFW") area. Although BHOC was originally a licensee of Gascard, one of

FleetCor's competitors, FleetCor purchased Gascard in 1995 and entered into a Bridging Agreement with BHOC to continue the relationship. A License Agreement was later implemented with the earlier Bridging Agreement in mind. The Bridging Agreement contains a "favored nations" provision that affects the Fuelman system License Agreement by allowing BHOC to incorporate favorable provisions in other licensing agreements into its own License Agreement. The "favored nations" provision ("FNP") is an important component of this litigation.

In 2001, FleetCor decided to increase its direct marketing and began to terminate the exclusive Fuelman licenses around the country and convert those to direct markets. FleetCor has since terminated all of the 30 licenses it originally issued except for that of BHOC. After extensive negotiations in 2002, the parties were unable to reach any agreement to end BHOC's Fuelman license. BHOC continues successfully to market the Fuelman system in the DFW area, and has clients including retail service stations and unattended fuel sites ("merchants"), and commercial fleet owners, municipalities, and school districts ("customers"). BHOC has long-term contracts with some of these entities.

In January 2006, BHOC sued FleetCor in Texas state court alleging FleetCor breached its License Agreement, de facto terminated the License Agreement, and tortiously interfered with its business relationships. FleetCor removed the case to the Northern District of Texas and later moved for summary judgment on all of BHOC's claims. BHOC moved to compel production of documents, and sought FleetCor's licensing agreements with other Fuelman licensees. BHOC filed a second motion to compel release of documents related to damages. On November 28, 2006, the district court granted BHOC's motions in part, ordering FleetCor to produce the relevant licensing agreements by December 18, 2006. On December 27, 2006, BHOC filed a motion for sanctions

arguing that the license agreements FleetCor produced were incomplete. The district court denied the motion because, according to FleetCor, the court agreed during the telephone hearing that FleetCor produced every page of every agreement it could locate.[1]

On December 28, 2006, the district court granted FleetCor's motion for summary judgment on all of BHOC's claims except its claim related to FleetCor's modification of the "pre-purchase controls." BHOC elected to dismiss the remaining claim with prejudice and appeal the summary judgment.

## DISCUSSION

This court reviews a district court's grant of summary judgment de novo. Morris v. Equifax Info. Servs., L.L.C., 457 F.3d 460, 464 (5th Cir. 2006). Summary judgment is appropriate when, after considering the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); Bulko v. Morgan Stanley DW Inc., 450 F.3d 622, 624 (5th Cir. 2006). The moving party has the initial burden of showing there is no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

## I. Discovery

---

[1] The transcript of this hearing is not in the record.

BHOC makes two principal arguments why the district court's decision to end discovery and rule on FleetCor's Motion for summary judgment was an abuse of discretion. Each will be dealt with in turn.

Generally, summary judgment may be granted only after an "adequate time for discovery." Catrett, 477 U.S. at 322. The courts of appeal generally review for abuse of discretion a claim that summary judgment was prematurely entered because additional discovery was needed. Paul Kadair, Inc. v. Sony Corp. of Am., 694 F.2d 1017, 1029 (5th Cir. 1983). A plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by plaintiff to withstand a Rule 56(e) motion for summary judgment.[2] Id. at 1029-30. And district courts have broad discretion to enforce the integrity of pretrial scheduling orders. Turnage v. General Elec. Co., 953 F.2d 206, 208 (5th Cir. 1992).

## A. Undiscovered licensing provisions

First, BHOC argues that the district court abused its discretion by prematurely ending discovery before BHOC could adequately review the documents FleetCor was compelled to produce. Thus, BHOC argues, the court was not aware of the full extent of FleetCor's contractual obligations when it ruled on FleetCor's Motion for summary judgment. In other words, because

---

[2] The Seventh Circuit has concluded in a similar case involving a favored-nations provision that "Rule 56 does not require that discovery take place in all cases before summary judgment can be granted." Waterloo Furniture Components, Ltd. v. Haworth, Inc., 467 F.3d 641, 648 (7th Cir. 2006). It further stated, "the fact that discovery is not complete — indeed has not begun — need not defeat a motion for summary judgment. Thus, the mere fact that the district court granted [defendant's] summary judgment motion prior to allowing any discovery is irrelevant." Id. (internal citation and quotations omitted).

BHOC did not have an opportunity to comb through other Fuelman licensing agreements for favorable provisions it could have incorporated into its own License Agreement, the district court did not know the full scope of FleetCor's contractual obligations and, therefore, it was premature to rule on FleetCor's motion for summary judgment.

The district court ruled, however, on the only three licensing provisions that BHOC had already sought to incorporate into its License Agreement. After finding that these provisions yielded no benefit to BHOC, the district court concluded that others were unlikely to do so either. The court's refusal to await further revelations from BHOC's review of other franchisees' licensing agreements was not done to prejudice BHOC, nor did it do so. The court specifically concluded its discussion of the three proffered provisions by noting that:

> Such an adjudication [against BHOC] will be <u>without</u> <u>prejudice</u> to the right the court has concluded that plaintiff has to receive from FleetCor on request for review license agreements between FleetCor and other licensees, <u>see</u> <u>Epic Sys. Corp. v. Allcare Health Mgmt.</u>, 2002 WL 31051023 (N.D. Tex. 2002), and to urge that it is entitled to the benefit of any more favorable terms and provisions of which plaintiff learns as a result of such review or by other means. (emphasis added); (footnote omitted).

The district court's decision to rule follows closely the mid-January 2007 discovery deadline as stated in its original scheduling order. Turnage, 953 F.2d at 208. Furthermore, BHOC's failure to make a Rule 56(f) motion prior to summary judgment, object to the district court's action, or ask for a rehearing of FleetCor's Motion for summary judgment "indicates that [appellant] had no further evidence to present or argument to make regarding any material dispute of fact." Exxon Corp. v. St. Paul Fire and Marine Ins. Co., 129 F.3d 781, 786–87

(5th Cir. 1997). We also note that although nine days is not a lot of time to comb through 1,000 pages of documents, it is certainly sufficient. Had BHOC found anything truly beneficial in the documents, it could have made the aforementioned motion. In fact, BHOC was not precluded from referring to any additional favorable contract provisions in its brief to this court, for the purpose of demonstrating prejudice from the district court's prompt ruling. Based on all these considerations, the district court did not abuse its discretion by ending discovery of unincorporated provisions and ruling on FleetCor's Motion for summary judgment.

B. "Incorporated" provisions

BHOC next contends that the court abused its discretion by prematurely ending discovery related to the WESCO provision it claimed to incorporate into its License Agreement. BHOC's argument initially depends upon the effect of the Bridging Agreement's FNP, which must be established before BHOC can incorporate any provisions from other agreements. However, the district court declined to rule on whether the FNP was applicable; it simply assumed applicability for the purpose of its analysis.[3] BHOC's contention that the district court essentially rejected FleetCor's contention that the FNP did not apply is thus inaccurate. Instead, the district court concluded that neither the WESCO nor other cited provisions could be construed to lend any benefit to BHOC. Further, the district court concluded that BHOC had not produced any evidence related to a breach of the "WESCO" "new products and services" provision[4]

---

[3] By not ruling on the applicability of the FNP, the district court aided BHOC by not prejudicing its possible future claims against FleetCor.

[4] The relevant provision states:

through FleetCor's MasterCard and FleetAll fuel cards, and that FleetCor's Commercial Fuel Network ("CFN") business was not a "new product or service" under the provision.

Like the district court, we need not construe the License Agreement[5] and determine the applicability of the FNP because we agree, infra, that BHOC has produced no evidence that FleetCor has breached the WESCO provision by competing in the DFW area. It was within the court's discretion to rule on FleetCor's Motion for summary judgment based on its conclusion that the three licensing agreements submitted into evidence did not contain any favorable provisions for BHOC that would defeat summary judgment, and because BHOC submitted no evidence of breach. Paul Kadair, Inc., 694 F.2d at 1029-30.

## II. FleetCor's Competition in the DFW Area

BHOC vigorously contends that the district court erred by granting judgment for FleetCor based on a factual finding that FleetCor was not competing with BHOC, when there was no summary judgment evidence to support such a finding, and when such a finding was contrary to FleetCor's admissions. BHOC argues that FleetCor's motion for summary judgment was premised on its purported admission that it was competing in the DFW area through its MasterCard and CFN business, and that it had the right to do so. FleetCor argues it did not admit competing with BHOC, it did meet its summary

---

Exclusive Rights to New Products/Services. Marketer will have the exclusive rights to market in the Licensed Territory new products and services offered by Licensor. Neither the Licensor nor anyone acting on its behalf will circumvent Marketer to market directly to their customers.

[5] It would be imprudent to construe the License Agreement because the parties did not brief the issue.

judgment burden, and in any event, summary judgment was appropriate on grounds not reached by the district court.

A.    MasterCard

BHOC argues that FleetCor breached the License Agreement because FleetCor is competing in the DFW area through its MasterCard fuel card. FleetCor offered a sworn affidavit that it had never marketed the MasterCard fleet card in the DFW area.  The district court found that BHOC produced no evidence in support of its MasterCard claim.  BHOC's only  evidence of competition is an affidavit by Barney Holland, Jr., that he believed BHOC suffered financially due to FleetCor's marketing of "competitive products" in the DFW area.  This does not raise a genuine issue of material fact.[6]  See Reese v. Anderson, 926 F.2d 494, 499 (5th Cir. 1991) (conclusory affidavit did not defeat summary judgment because, "[w]hat is needed in an affidavit of this sort are facts, reasons, observations, and explanations—in a word, evidence—not conclusions").  BHOC essentially admits there is no evidence other than FleetCor's "admission," and the record supports the district court's finding.  See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 544 (5th Cir. 2005) ("On summary judgment, the moving party is not required to present evidence proving the absence of a material fact issue. . . ."); see also Liberty Lobby, 477 U.S. at 257. On this record, we find no error in the district court's finding.

B.    CFN

---

[6] As FleetCor notes, Barney Holland's statement "does not mention CFN or MasterCard, identify any customers or sales that Mr. Holland believes BHOC has lost, or state what facts support his opinion that BHOC lost them."

BHOC also argues that section 1.1A of the original License Agreement and the "new products and services" provision in the WESCO license agreement[7] prohibit FleetCor's subsidiary CFN business. As mentioned above, BHOC argues that FleetCor failed to satisfy the evidentiary burden necessary to obtain summary judgment on this issue. FleetCor responds that its subsidiary purchased a business from CFN that works with independent marketers of the CFN card, but the FleetCor subsidiary only processes transactions using the CFN cards. FleetCor does not market them to potential customers and is not competing with BHOC. The district court agreed that the undisputed evidence shows FleetCor has not marketed a competing fuel card nor, with CFN as a card-processing arrangement, furnished a new "product or service" in the DFW area.

Unfortunately, BHOC has produced no evidence related to FleetCor's corporate structure, the nature of the CFN subsidiary, or whether FleetCor is actually marketing CFN cards rather than simply processing transactions. Again, Barney Holland's affidavit stating that he "believes" BHOC has suffered financially due to FleetCor's marketing of competitive products does not raise a genuine issue of material fact. See Reese, 926 F.2d at 499. And, as FleetCor notes, Barney Holland's statement does not specifically mention CFN. See Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) (stating that the nonmovant must identify specific evidence in the record and articulate the precise manner in which that evidence supports its claims) (internal quotation omitted).

---

[7] The WESCO provision states:

Exclusive Rights to New Products/Services. Marketer will have the exclusive rights to market in the Licensed Territory new products and services offered by Licensor. Neither the Licensor nor anyone acting on its behalf will circumvent Marketer to market directly to their customers.

BHOC complains that because FleetCor premised its motion for summary judgment on the legal inapplicability of the FNP, BHOC had no duty to produce evidence of CFN's activities in the DFW area. Moreover, FleetCor offered no evidence of CFN's actitivies in the district court on summary judgment, hence we cannot consider it here.[8] Finally, the district court erred in basing summary judgment on facts of non-competition that were not proven as to CFN.[9] These arguments are misplaced.

The district court's memorandum and order states that the "Grounds of FleetCor's Motion" include "that there is no evidence to support one or more of the facts essential to the theories," and that BHOC's claims were precluded by both the "terms of the operative contracts and by undisputed facts" (emphasis added). Additionally, FleetCor's motion for summary judgment specifically disputed BHOC's claim that its CFN business competes with BHOC in the DFW area[10] and thus put BHOC on notice that it was advancing this theory and

---

[8] See Johnson v. Sawyer, 120 F.3d 1307, 1316 (5th Cir. 1997) (stating that "[a]lthough we can affirm a summary judgment on grounds not relied on by the district court, those grounds must at least have been proposed or asserted in that court by the movant"); FDIC v. Laguarta, 939 F.2d 1231, 1240 (5th Cir. 1991) (refusing to affirm summary judgment on grounds "neither raised below ... nor even raised sua sponte by the district court"); Frank C. Bailey Enter., Inc. v. Cargill, Inc., 582 F.2d 333, 334 (5th Cir. 1978).

[9] This argument is a companion to BHOC's argument in part I.B., supra. The implication is that because the district court errantly granted summary judgment without any evidence related to CFN's activities, it also prematurely ended discovery, which constituted an abuse of discretion. But based on our conclusion that BHOC's failure to produce any evidence of CFN's purported competition was before the district court on summary judgment, the district court did not err in ending discovery and granting FleetCor's motion for summary judgment.

[10] The citation to the record used by BHOC to support its argument that FleetCor admitted it was competing with BHOC actually supports FleetCor. In response to BHOC's claim that FleetCor was competing in the DFW area, FleetCor stated that the "factual premise of this allegation is wrong." BHOC argues the statement is not "evidence" in support of

placed the issue before the district court for consideration. See Johnson, 120 F.3d at 1316. Although FleetCor's assertion in its summary judgment briefs is not properly summary judgment evidence, BHOC failed to produce any evidence that FleetCor was competing with BHOC in the DFW area through the CFN business. And on summary judgment, FleetCor is not required to prove the contrary. See Liberty Lobby, 477 U.S. at 257; Boudreaux, 402 F.3d at 544.

BHOC insists that it tried to uncover CFN's DFW activities but was stonewalled by FleetCor's "dilatory" tactics. Although FleetCor had to be compelled by the district court to produce documents related to CFN's activities, this does not relieve BHOC of producing evidence necessary to survive a motion for summary judgment. As the Supreme Court stated in Liberty Lobby: "[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant . . . ."). 477 U.S. at 257. If BHOC was convinced that additional evidence should have been adduced to the district court, it could have filed a Rule 56(f) motion or asked for rehearing. Its failure to do so suggests the futility of further evidentiary efforts. Exxon Corp., 129 F.3d at 786–87. On this record, the district court did not err in granting FleetCor's motion for summary judgment.[11]

---

FleetCor's argument that it was not competing in the DFW area. That argument is correct, but FleetCor's assertion is supported by evidence in Charles Freund's affidavit.

[11] BHOC also argues it is entitled to a preliminary injunction to prevent FleetCor from competing in the DFW area. But, as FleetCor argues, one seeking injunctive relief must demonstrate a real and immediate threat that he will be subject to the behavior he seeks to enjoin. See Gladden v. Roach, 864 F.2d 1196, 1198 (5th Cir. 1989). BHOC has presented no evidence of any threatened competition in violation of the License Agreement and, therefore, is not entitled to an injunction. Further, BHOC did not seek a declaratory judgment in the district court and may not create such a claim on appeal.

## III. De Facto Termination

BHOC argues the district court erred in granting summary judgment on its de facto termination claim by requiring BHOC to prove FleetCor's intent to injure BHOC, when such an element is not part of BHOC's claim. Specifically, BHOC argues that by competing in the DFW area, altering the basic tenets of the Fuelman program through elimination of the pre-purchase controls, and altering the financial structure of the program through the use of the retail-minus formula, FleetCor has terminated the agreement. The district court concluded that "[t]here is no summary judgment evidence . . . that FleetCor took any of the actions of which plaintiff complains for the purpose of destroying, or interfering with, the operation by plaintiff of its FleetCor System business."

In general, constructive termination requires that the licensee be effectively forced out of business. See, e.g., Portland 76 Auto/Truck Plaza, Inc. v. Union Oil Co. of Ca., 153 F.3d 938, 948 (9th Cir. 1998); see also Petereit v. S.B. Thomas, Inc., 63 F.3d 1169, 1183 (2d Cir. 1995) (holding that a constructive termination claim requires proof of a "substantial decline in franchisee net income"). But here, BHOC has presented no evidence that its business has declined as a result of BHOC's alleged termination of the License Agreement.

Furthermore, the three activities that BHOC argues constitute the termination fail to support its claim. First, although BHOC relies on the fact that FleetCor's use of a retail-minus revenue formula will undermine its business, it does not challenge the district court's conclusion that FleetCor's use of the formula with Shell did not constitute a breach of the License Agreement. Second, BHOC abandoned its "pre-purchase controls" claim, allowing it to be dismissed with prejudice in order to pursue its appeal of the summary judgment.

13

BHOC cannot now use FleetCor's elimination of the pre-purchase controls as a rationale that it terminated the contract, especially because the issue did not go to trial. Third, as shown above, BHOC failed to produce any evidence that FleetCor was competing in breach of the License Agreement, nor did it demonstrate that the challenged activities violated the agreement. Absent these predicate breaches of the Licensing Agreement, BHOC cannot claim de facto termination. This argument lacks merit.

## CONCLUSION

For these reasons, the judgment of the district court is AFFIRMED.