# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 25, 2008

Charles R. Fulbruge III
Clerk

No. 07-10970

TERESA DREYER

Plaintiff-Appellant

v.

SHANA YELVERTON, Individually and In Her Official Capacity as
Southlake City Manager; KEVIN HUGMAN, Individually and In His Official
Capacity as Southlake Human Resources Director; CHUCK KENDRICK,
Individually and In His Official Capacity as Southlake Public Works
Operations Manager

Defendants-Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:06-CV-644

Before HIGGINBOTHAM, DAVIS, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

In her appeal from a Rule 54(b) judgment against her state-law claim
(defamation), Teresa Dreyer challenges the summary judgment, awarded
pursuant to Texas law for official immunity, for Shana Yelverton (City of
Southlake, Texas, Manager), Kevin Hugman (City Human Resources Director),

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

and Chuck Kendrick (City Public Works Operations Manager) (Defendants). (Consistent with a Rule 54(b) judgment, Dreyer has other claims pending in district court.) Dreyer asserts: the district court abused its discretion by denying discovery prior to awarding summary judgment for Defendants against her defamation claim; that discovery denial violated due process; and, in the alternative, Defendants are not entitled to summary judgment based on official immunity. AFFIRMED.

I.

Dreyer began her employment with the City in June 2003, as a water-utilities assistant in the Public Works Department, and remained in that position until her termination in 2006. She was terminated for falsifying her timesheets, being absent from work, working at home, and working overtime without permission.

Dreyer reported directly to Patterson, the Public Works Operations Manager. Patterson, in turn, reported to Farahnak, the Director of the Public Works Department. Dreyer asserts that, when she was hired, Patterson and Farahnak "allowed her to work a flexible schedule" because her husband was suffering from a serious illness. This modified schedule, Dreyer maintains, allowed her to work from home, work abnormal hours, and report late to work.

In 2004, the City's mayor and the Tarrant County district attorney, suspicious of financial mismanagement and misconduct, initiated an investigation of the Public Works Department. That investigation, which concerned fraudulent timesheets, accepting bribes, and using city resources for personal benefit, culminated in a number of terminations and criminal charges. Among others, Patterson, Dreyer's immediate supervisor, was terminated and convicted for, inter alia, receiving payment for work he did not perform.

Dreyer asserts she questioned Patterson's financial practices while he was her supervisor; cooperated with the district attorney during the investigation;

2

and was the last person interviewed by the district attorney prior to Patterson's being indicted. Defendant Kendrick replaced Patterson as the Public Works Operations Manager in 2005.

Dreyer's responsibilities included collecting timesheets from Public Works Department employees, reviewing them, and forwarding them to Kendrick for his review and final approval. Dreyer was classified as a "nonexempt employee", meaning her normal working hours were Monday through Friday, from 8:00 a.m. to 5:00 p.m., with one hour for lunch. Overtime hours and work performed from home or outside her normal duty hours and days required Kendrick's approval.

On 27 March 2006, Dreyer submitted a timesheet to Kendrick for the two-week pay period for Sunday, 12 March, through Saturday, 25 March, indicating she worked a total of 96 hours. On the timesheet, Dreyer indicated that, for each of the two weeks, she worked eight hours per day from 8:00 a.m. to 5:00 p.m., Monday through Friday, for 80 total hours. She also claimed 16 hours of overtime: six hours on Sunday, 12 March (for processing work orders), and ten hours for working through lunch each of the ten workdays.

On the day Dreyer submitted the timesheet, Kendrick immediately informed her, via memorandum, that she was being placed "on paid administrative leave . . . pending consideration of [her] falsely reporting payroll records". The next day, 28 March, Dreyer e-mailed Defendants Hugman and Yelverton, and the Public Works Department Director, Price (who had replaced Farahnak), and stated that, during the week of 19 March to 25 March, she "reported to work around 10:00 a.m. each morning . . . and left work at 5:00 p.m. each afternoon. The only day [she] took lunch was on Friday and [she] was gone for 1.5 hours". Dreyer explained that, on 21 March through 23 March, she worked at home in the evenings on the City's annual water-quality report. She stated:

> I started recreating the report th[e] evening [of 21 March]. I worked 3 hours that evening from 7:00 p.m. to 10:00 p.m. I completed most of page 2 containing a large table and material. On March 22, I worked 3 hours from 7:00 p.m. to 10:00 p.m. and completed page 3 containing tables and documented water material. On March 23, I worked 3 hours on the cover page and formatting the document with required breaks in columns and tables for the printer to reformat into their software . . . I worked a total of 9 hours on this report. I reported 5 hours. When [Kendrick] accused me of misrepresenting my time I told him I would take the hours off and did so.

Dreyer's timesheet, however, reflected neither the three hours (total of nine) on 21, 22, and 23 March, nor that she worked at home on the water-quality report. This information was also not given to Kendrick when he initially questioned her. Accepting Dreyer's e-mail as true, she accounts for a total of 93.5 hours for the two-week pay period at issue, 2.5 hours less than originally submitted. Moreover, Dreyer conceded in her 28 March e-mail that she "did not ask permission to create this [water-quality] document from home" and that "it is solely [her] fault that [she] did not ask [Kendrick] about working on the water-quality report at home".

In a 3 April memorandum to Dreyer, Kendrick stated his records reflected: she had worked only 30.75 hours during the week of 19 March through 25 March (although she submitted 45 hours); she failed to notify Kendrick, her immediate supervisor, that she would be late on any day from 19 March to 25 March; and she was not authorized to work overtime hours or from home. Subsequently, for summary-judgment purposes, Kendrick stated by declaration that the water-quality report Dreyer alleged she worked on at home did not "represent any significant amount of time expended by Ms. Dreyer, and particularly [did] not support her claim that she had spent six hours working at her home on March 12 and her other claim that she had worked nine hours at home . . . the following week".

4

In the 3 April memorandum, Kendrick also questioned Dreyer's claim that she worked six overtime hours processing work orders at home on Sunday, 12 March, because, at her home, Dreyer allegedly did not possess the software required to process such orders. Kendrick concluded Dreyer submitted a false timesheet, was absent from work without notice or permission, and failed to receive written permission to work outside of her normal authorized working hours or overtime. Accordingly, through the 3 April memorandum, Kendrick informed Dreyer that she was terminated for those reasons.

When Kendrick originally questioned Dreyer about her timesheet on 27 March, she responded by removing the 16 overtime hours. Dreyer later asserted, in her declaration attached to her response in opposition to Defendants' summary-judgment motion, that she inadvertently wrote "work orders", rather than "purchase orders", on the timesheet.

On 7 April, Dreyer filed a grievance, challenging her termination, with Price, the Public Works Department Director. On 13 April, Price held a hearing. Kendrick and an employee from human resources were present. At that hearing, Dreyer is said to have conceded: she did not have Kendrick's permission to work overtime at the office or her home; and the hours reflected on the timesheet did not reflect the actual hours she worked. Price concluded Dreyer submitted a false timesheet and did not receive permission to work overtime or at home.

No transcript from the hearing is in the record on appeal. The above is based on Price's 21 April letter to Dreyer, recounting what she said at the hearing and upholding her termination.

On 26 April, Dreyer appealed Price's termination-decision to Defendant Yelverton, the City Manager. As part of her appeal, she submitted (apparently on 30 May, the day of the below-described hearing) a statement to Defendants Yelverton and Hugman (the City Human Resources Director), asserting: the overtime hours Dreyer submitted were hours worked from home; she had never

been required to obtain her supervisor's consent to be absent; and her termination was in retaliation for her absence from work due to her husband's illness. In her appeal, Dreyer admitted, however, that, although her timesheet stated she worked from 8:00 a.m. to 5:00 p.m. on Monday, 20 March, to Friday, 24 March, she reported to work at least an hour late on Monday through Thursday of that week. She also claimed she notified Kendrick she would be late, but conceded she "may not have had his permission".

On 30 May, Yelverton conducted a hearing in accordance with the City's complaint and grievance procedure. (As with the first (13 April) hearing, no transcript for this hearing is in the record on appeal.) On 8 June, Yelverton notified Dreyer, by letter, that the termination was being upheld.

On 8 September 2006, Dreyer filed this action, raising, through 42 U.S.C. § 1983, claims against the City, as well as Defendants in their official capacity, for violations of her rights to free speech, equal protection, and due process. Dreyer also presented a state-law defamation claim against Yelverton, Hugman, and Kendrick (again, Defendants), in their individual capacity.

In answering, Defendants presented immunity defenses. Defendants also filed a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim. In that regard, on 19 October, the district court: issued an initial scheduling order for consideration of the defenses of absolute immunity and absolute privilege; and ordered Dreyer to file a Rule 7(a) reply. The Rule 12(b)(6) motion to dismiss was denied as premature.

Through a 24 October order, the court, inter alia, modified the initial scheduling order to allow Defendants to pursue qualified, official, or absolute immunity, or absolute privilege. In that order, the district court stayed all discovery "pending resolution of the immunity . . . defense[] raised by Defendants".

6

Dreyer filed the ordered Rule 7(a) reply on 20 November. Defendants then moved for summary judgment pursuant to Rule 56, asserting, inter alia, official immunity under Texas law. The following day, Dreyer filed an emergency motion seeking modification of the scheduling order to allow Dreyer to conduct discovery. In the brief in support of that motion, Dreyer requested the district court to

> modify its earlier Order which stayed discovery in this case, based on the fact that the defendants are now seeking summary judgment based upon official immunity, an element of which is the factual element of good faith. Without allowing some form of limited discovery, the plaintiff will be wholly unable to respond to this aspect of the defendants' motion for summary judgment.

Dreyer's reply to Defendants' brief in opposition to the motion adds nothing to why the requested discovery was needed. In that reply, she stated: "Additionally, the sort of discovery which the plaintiff seeks should be obvious to the defendants: depositions of the individual defendants and other current and former City . . . employees who can testify regarding the Public Works Department's policies and procedures as they relate to time records and the plaintiff's attendance and work product during the relevant time period."

On 10 January 2007, the district court denied Dreyer's discovery request. Her opposition to summary judgment was filed that same day. Regarding discovery, Dreyer asserted in her opposition that summary judgment was improper because "no discovery has been conducted".

In a 22 August amended order, the district court granted summary judgment against Dreyer's defamation claim, ruling Defendants were entitled to official immunity under Texas law. Dreyer v. City of Southlake, No. 4:06CV644 (N.D. Tex. 22 Aug. 2007). The court also dismissed Dreyer's federal-civil-rights claims against Defendants because "the official-capacity claims are

in reality claims against [the] City". Id. (alteration in original) (citation and internal quotation marks omitted).

In September 2007, the district court entered a judgment in favor of Defendants pursuant to Rule 54(b), dismissing with prejudice all claims against them. On the other hand, the claims against the City, pursuant to § 1983, are pending in district court.

II.

Dreyer contests only the summary judgment against her defamation claim. In other words, she does not appeal the dismissal of the federal-civil-rights claims against Defendants in their official capacity.

A summary judgment is reviewed de novo, applying the same standard as did the district court. E.g., Wheeler v. BL Dev. Corp., 415 F.3d 399, 401 (5th Cir. 2005). Such judgment is proper if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law". FED. R. CIV. P. 56(c). "A genuine issue of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party." Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp., 292 F.3d 471, 478 (5th Cir. 2002). Restated, no genuine issue of material fact exists if, based on the summary-judgment record, no reasonable juror could find for the nonmovant. E.g., Jenkins v. Methodist Hosps. of Dallas, Inc., 478 F.3d 255, 260 (5th Cir.), cert. denied, 128 S. Ct. 181 (2007).

A district court's decision to stay discovery is reviewed for an abuse of discretion. E.g., Brazos Valley Coalition for Life, Inc. v. City of Bryan, Tex., 421 F.3d 314, 327 (5th Cir. 2005); Sutter Corp. v. P & P Indus., Inc., 125 F.3d 914, 917 (5th Cir. 1997). "A district court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Cook Children's Med. Ctr. v. New England PPO Plan of Gen'l Consol. Mgmt., Inc., 491 F.3d 266, 271 (5th Cir. 2007) (quoting Esmark Apparel, Inc. v.

James, 10 F.3d 1156, 1163 (5th Cir. 1994)) cert. denied, 128 S. Ct. 1223 (2008). This abuse of discretion standard applies as well to a ruling, under Rule 56(f), on whether to permit additional time for discovery or to obtain other summary-judgment evidence to oppose summary judgment. E.g., Stearns Airport Equip. Co., Inc. v. FMC Corp., 170 F.3d 518, 534 (5th Cir. 1999).

Dreyer maintains the district court's discovery stay was improper and denied her due process. In the alternative, she asserts the official-immunity summary judgment was improper because a genuine issue of material fact exists on whether Defendants acted in good faith.

### A.

As noted, the district court, sua sponte, stayed discovery in its initial scheduling order, and, despite Dreyer's subsequent motion for discovery, did not allow it prior to ruling on Defendant's summary-judgment motion. Dreyer presents two bases for challenging her not being permitted discovery regarding state-law official immunity. Each basis fails.

### 1.

As her first basis for maintaining summary judgment was improper because it was rendered without discovery, Dreyer relies on Schultea v. Wood, 47 F.3d 1427 (5th Cir. 1995) (en banc). Schultea held that, if a defendant claims qualified immunity, the district court may require a plaintiff to file a Rule 7 reply to that defense. Id. at 1431. This is because, once the government official pleads qualified immunity as an affirmative defense, the burden shifts to the plaintiff to rebut the defense. E.g., Michalik v. Hermann, 422 F.3d 252, 262 (5th Cir. 2005); Schultea, 47 F.3d at 1433. Contrary to Dreyer's assertions, Schultea does not expressly preclude a district court's rendering summary judgment without discovery.

Dreyer is correct, however, that district courts may be required to allow discovery before ruling on a summary-judgment motion. On the other hand, it

is incumbent upon counsel to properly move, under Rule 56(f), for such discovery. Restated, "if a party cannot adequately defend [against a summary-judgment] motion, Rule 56(f) is his remedy". Washington v. Allstate Ins. Co., 901 F.2d 1281, 1285 (5th Cir. 1990) (citations omitted). But, "Rule 56(f) does not require that any discovery take place before summary judgment can be granted". Id. (citations omitted).

> Rule 56(f) provides:
>
> If a party opposing [a summary-judgment] motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order.

FED. R. CIV. P. 56(f) (emphasis added). Rule 56(f) "may not be invoked by the mere assertion that discovery is incomplete; the opposing party must demonstrate how the [requested discovery or time to provide other summary-judgment evidence] will enable him to rebut the movant's allegations of no genuine issue of material fact". Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 28 F.3d 1388, 1396 (5th Cir. 1994) (citation and internal quotation marks omitted).

"Rule 56(f) allows for further discovery to safeguard non-moving parties from summary judgment motions that they cannot adequately oppose." Culwell v. City of Fort Worth, 468 F.3d 868, 871 (5th Cir. 2006) (citation omitted). "Such motions are broadly favored and should be liberally granted." Id. (citation omitted). "A non-movant seeking relief under Rule 56(f) must show: (1) why he needs additional discovery and (2) how that discovery will create a genuine issue of material fact." Adams v. Travelers Indem. Co. of Conn., 465 F.3d 156, 162 (5th Cir. 2006); Beattie v. Madison County Sch. Dist., 254 F.3d 595, 605 (5th Cir. 2001); see also Access Telecom, Inc. v. MCI Telecomms. Corp., 197 F.3d 694, 719

(5th Cir. 1999) ("To obtain a continuance of a motion for summary judgment, a party must specifically explain both why it is currently unable to present evidence creating a genuine issue of material fact and how a continuance would enable the party to present such evidence." (citation and internal quotation marks omitted)). "A party cannot evade summary judgment simply by arguing that additional discovery is needed, and may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts." Adams, 465 F.3d at 162 (footnotes and internal quotation marks omitted).

In Access Telecom, the plaintiff contested the district court's granting summary judgment after staying discovery on everything except jurisdictional issues. 197 F.3d at 719. Because the plaintiff did not file a Rule 56(f) motion, this court held the plaintiff "waived the issue of inadequate discovery". Id. ("[T]he appropriate way to raise th[is] issue is for the party opposing the motion for summary judgment to file a motion for a continuance with an attached affidavit stating why the party cannot present by affidavit facts essential to justify the party's opposition".).

In Waterloo Furniture Components, Ltd. v. Haworth, Inc., the Seventh Circuit held "the mere fact that the district court granted [the defendant's] summary judgment motion prior to allowing any discovery is irrelevant". 467 F.3d 641, 648 (7th Cir. 2006). In that case, after the district court stayed discovery, the plaintiff filed a Rule 56(f) motion; it was denied. Id. The Seventh Circuit held the district court did not abuse its discretion in denying the motion because the plaintiff failed to adequately state why, absent further discovery, it could not respond to the summary-judgment motion. Id.

As discussed, after the district court stayed all discovery, Dreyer filed an emergency motion seeking modification of that order. In her motion, as quoted earlier, Dreyer requested the district court to

> modify its earlier Order which stayed discovery in this case, based on the fact that the defendants are now seeking summary judgment based upon official immunity, an element of which is the factual element of good faith. Without allowing some form of limited discovery, the plaintiff will be wholly unable to respond to this aspect of the defendants' motion for summary judgment.

(Emphasis added.) Dreyer did not specifically discuss, however, why she needed additional discovery and what discovery would likely produce. See Adams, 465 F.3d at 162. (Although not detrimental to this issue, Dreyer did not even reference Rule 56(f) in her motion.)

Furthermore, Dreyer did not file the affidavit expressly required by Rule 56(f). As quoted above, in her conclusory motion, Dreyer asserted only: that one element of state-law official immunity is good faith; and that, without "limited discovery", she would "be wholly unable to respond to this aspect of" Defendants' summary-judgment claim to official immunity. And, as also noted, concerning discovery, Dreyer's opposition to summary judgment stated only that such judgment was improper because "no discovery has been conducted".

In sum, in district court, Dreyer requested discovery only on official immunity's good-faith element. Under Texas law, however, Defendants, not Dreyer, have the burden for this element; they (government officials) must show they acted in good faith. E.g., Telthorster v. Tennell, 92 S.W.3d 457, 460-61 (Tex. 2002). (Conversely, as noted supra, when a government official pleads the qualified-immunity affirmative defense, the burden shifts to the plaintiff. E.g., Michalik, 422 F.3d at 262.) Moreover, good faith is measured objectively, without regard to the official's subjective state of mind. Titus Reg'l Med. Ctr. v. Tretta, 180 S.W.3d 271, 275 (Tex. App. 2005).

In support of their summary-judgment motion, Defendants presented, inter alia, Dreyer's above-discussed 28 March e-mail and her appeal statement (apparently provided on 30 May 2006). In the e-mail, Dreyer admitted to:

12

falsifying her timesheet; and not having permission to work from home. In her appeal statement to Defendants Yelverton and Hugman, Dreyer again admitted she reported to work late on Monday, 20 March, to Thursday, 23 March, and conceded she "may not have had [her supervisor's] permission". Defendants also submitted Dreyer's original falsified timesheet. It is unclear what relevance such "limited discovery" would have had to the objective element of good faith for which, again, Defendants had the burden. In any event, Dreyer did not show, as required for a Rule 56(f) motion, how discovery would have created a genuine issue of material fact. See Adams, 465 F.3d at 162.

Therefore, because Dreyer did not comply with Rule 56(f) in requesting discovery, the district court did not abuse its discretion in denying it. See Gibson v. United States Postal Serv., 380 F.3d 886, 889 n.2 (5th Cir. 2004) (holding no abuse of discretion in denying a Rule 56(f) motion because movant did not explain how additional discovery would create a genuine issue of material fact); see also Lewis v. City of Ft. Collins, 903 F.2d 752, 758-59 (10th Cir. 1990).

2.

Concerning no discovery, Dreyer also maintains she was denied due process as a result. Defendants counter that she failed to raise this due-process contention in district court. Dreyer did present this issue, however, in her brief in support of her emergency motion to strike Defendants' summary-judgment motion.

Hill v. McDermott, Inc., 827 F.2d 1040, 1044 (5th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986)), held: "A summary judgment reached in accordance with Federal Rule of Civil Procedure 56 . . . satisfies the requirements of due process." As discussed supra, discovery is not mandatory before a Rule 56 summary judgment may be granted. See Washington, 901 F.2d at 1285. The district court, in its discretion, stayed all discovery. Dreyer failed

to properly seek discovery under Rule 56(f). In short, Dreyer's due-process rights were not violated. See Hill, 827 F.2d at 1044.

## B.

In the alternative, Dreyer maintains Defendants were not entitled to state-law official immunity. In granting summary judgment on that basis, the district court did not address Defendants' alternative absolute-immunity claim. Likewise, for the following reasons, we agree that Defendants are entitled to official immunity, and, therefore, do not address absolute immunity.

### 1.

By motion to this court, filed a week prior to oral argument, Dreyer seeks to supplement the record with documents obtained through discovery for her pending federal-civil-rights claims in district court against the City. Those materials, however, were not presented to the district court in opposition to summary judgment and, therefore, were not considered when it upheld official immunity. Needless to say, "[w]e are limited in our [de novo review of a summary judgment] to that information properly before the district court at the time of its decision". Palasota v. Haggar Clothing Co., 499 F.3d 474, 489 n.12 (5th Cir. 2007) (citation omitted).

### 2.

"Official immunity is an affirmative defense that shields government employees from personal liability so that they are encouraged to vigorously perform their duties." Telthorster, 92 S.W.3d at 460-61 (citation omitted). A public official sued under Texas law is entitled to official immunity for acts: performed within the scope of his authority; that were discretionary; and, for which the official acted in good faith. City of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex. 1994) (citations omitted). As discussed supra, it is the government employee, not the plaintiff, who has the burden for each of these elements. Telthorster, 92 S.W.3d at 461.

14

The parties do not dispute, and the record establishes, that Defendants were performing discretionary duties within the scope of their authority. Therefore, at issue is only the last prong of the official-immunity analysis: whether Defendants acted in good faith.

As discussed supra, to make this determination, the court applies an objective standard and asks "whether a reasonably prudent official, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred". Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 164 (Tex. 2004) (citations omitted). In other words, this standard is concerned solely with whether, based on the information known at the time the action was taken, a reasonable official would have believed his action was justified. Ballantyne v. Champion Builders, Inc., 144 S.W.3d 417, 426 (Tex. 2004).

The summary-judgment record establishes, under this objective standard, that a reasonable official, based on the information then known, would have believed terminating Dreyer was justified. The City's employee handbook states:

> Nonexempt employees performing work at any time other than authorized working hours is strictly forbidden unless authorized in writing by the employee's supervisor.

(Emphasis added.) The handbook provides for, inter alia, the termination of employees who are "[a]bsen[t] from duty without notice to and permission from the immediate supervisor except in circumstances beyond control which prevent giving notice" and for employees who "falsify[] personnel records". (Emphasis added.)

Dreyer does not assert she had written permission from Kendrick to work the overtime hours she submitted on her timesheet. Indeed, she admitted in her 28 March 2006 e-mail that she claimed payment for hours she did not work. She also conceded, in that e-mail, apparently at the 13 April 2006 hearing, and for

her 26 April 2006 appeal, that, inter alia, she did not have authorization to arrive late to work, work from home, or work overtime. She committed each act within the timesheet period at issue. Accordingly, under the applicable objective standard, and based on the information available at the time of Dreyer's termination, Defendants are entitled to summary judgment based on official immunity under Texas law.

### III.

For the foregoing reasons, the judgment for Defendants Yelverton, Hugman, and Kendrick is AFFIRMED.